[1] Sometime in 1925 or before, the exact date not being shown, the St. Louis Boating Association was incorporated under what is now Article 10, Chapter 33, R.S., 1939, Mo.R.S.A., entitled, "Benevolent, Religious, Scientific, Fraternal-Beneficial, Educational and Miscellaneous Associations." In 1925 there was an auxiliary organization formed by a number of the members of the St. Louis Boating Association, which was unincorporated, but adopted the name "Chain Yacht Club." On June 15, 1948, there was presented to and filed in the circuit court a petition, together with articles of association, both being signed by Charles L. Fairchild, Commodore, Alfred W. Brinkmeyer, Vice-Commodore, Robert Perrine, Rear Commodore, Wesley Fox, Recording Secretary and Jerrold D. Reffner, Financial Secretary, it being alleged that they were the officers of the Chain Yacht Club, and praying for a proforma decree incorporating an association "for the purpose of obtaining scientific, patriotic, fraternal-beneficial and educational information, under the name of Chain Yacht Club, Inc.," as stated in the petition, and as stated in the articles of association, to be as follows: "The objects and purposes of the Association shall be to promote sportsmanship among member yacht and boat owners; to foster a sense of patriotic responsibility and duty in the cause or event of national emergency or tribulation; to encourage and inculcate the principles of seamanship and navigation; to aid and assist in the education and dissemination of knowledge in regard to *Page 477 
the design, building and improvement of yachts, boats and cruisers of all types and description; to aid and assist in the registration of yachts and boats when necessary and proper; to promote yacht and boat races and cruises of all kind and character; to maintain logs, records and other documentary evidence relating to yachts and boats, races and cruises for the benefit of the membership; and in general to stimulate an interest in the various phases of yachting and boating among its members and in the community."
[2] On June 22, 1948, the court appointed Joseph A. Linder, an attorney, as a friend of the court, to examine the petition and show cause, if any there be, why the prayer of said petition should not be granted, as provided for under Section 5437, R.S., 1939, Mo.R.S.A. On July 2, 1948, the amicus curiae filed a written report, the general purport of which was that he had examined the articles of agreement and the petition, and had discussed and conferred with the attorney for the petitioners, and had inquired into the aims and purposes of the association, and recommending that the prayer of the petition be granted.
[3] On the same day, July 2, 1948, the court entered judgment that the petitioners and their associates be created a body politic and corporate, by and under the corporate name of Chain Yacht Club, Inc.
[4] Thereafter, on July 6, 1948, there was filed in court a motion signed by St. Louis Boating Association, Nash Schwent, Commodore, by their attorney, such motion alleging the incorporation of the St. Louis Boating Association; that such association had purchased a "Quarter-Boat"; that a social group was authorized and permitted to use the facilities of the association under the name of "Chain Yacht Club"; that recently such branch organization had made overtures to purchase the Quarter-Boat, and in furtherance of such purpose, to incorporate so that a legal entity would hold title to the boat; that such permission was granted but that the application for incorporation was to be deferred pending negotiations; that without the knowledge or consent of the St. Louis Boating Association the petition was filed, but it was thereafter agreed that the proceedings be "held up" pending negotiations; that the commodore of the proposed Chain Yacht Club is also a member of the St. Louis Boating Association, and was present at a meeting where an understanding was had that the application was to be "held up"; and that notice of such understanding was also given the amicus curiae; that the decree had been granted without opportunity given for objections to be made; that the objections are not frivolously made or with the sole purpose of hindering or delaying matters. The prayer of the motion was as follows:
[5] "Wherefore, movant respectfully objects to the report of amicus curiae as being inaccurate and not based on the actual facts then or now existing, and respectfully requests the Court to set aside its order granting pro forma decree of incorporation, and to give the St. Louis Boating Association and its members an opportunity to be heard."
[6] On July 8, 1948, the petitioners filed a motion to require the St. Louis Boating Association to make a deposit to pay costs and attorney fees.
[7] On August 11, 1948, petitioners filed a motion to strike from the files the motion of the St. Louis Boating Association which was filed on July 6, 1948, as above stated.
[8] On September 3, 1948, orders were made by the court sustaining the motion to strike from the files the motion of the St. Louis Boating Association, and overruling petitioners' motion for a cost deposit. The court's order not only struck from the files the motion of the St. Louis Boating Association, but also overruled the same.
[9] These orders were made after a lengthy discussion between the court and respective counsel, and counsel for each side fully stated the facts from his viewpoint. A further outline of the facts out of which the controversy arises would fill no useful purpose as we view the matter.
[10] As will be seen by reading the motion of the St. Louis Boating Association, as above outlined, it is no more nor less than a complaint that the petitioners proceeded with the incorporation of the Chain Yacht *Page 478 
Club without notice to the St. Louis Boating Association of when their petition would be called for determination by the court, and that this was done in the face of the fact that it was agreed that the proceedings would be delayed pending negotiations for the purchase of the Quarter-Boat. How those negotiations could possibly be affected by the fact that the Chain Yacht Club was incorporated or remained unincorporated during the negotiations is not shown, and we are unable to see. The only other contention of the St. Louis Boating Association is that for many years it had as an auxiliary organization an unincorporated association called "Chain Yacht Club" and that petitioners had no legal right to incorporate under a name in which it held a prior property right.
[11] The entire contention of appellant in this case was so ably and clearly decided against it in an opinion written by one of the most learned appellate judges to grace the bench of our state, in the case of Young Women's Christian Association v. St. Louis Women's Christian Association, 115 Mo.App. 228, 91 S.W. 171, that further citation of authorities or comment would be superfluous, unless as now claimed by appellant Section 21 of the Civil Code of Missouri, Laws 1943, pp. 363-364, Mo. R.S.A. § 847.21, operates to change the law as interpreted in the Young Women's Christian Association case.
[12] In that case the St. Louis Women's Christian Association was a benevolent society, and had an auxiliary organization under the name of "Young Women's Christian Association," an unincorporated body. Certain Christian women filed a petition in the circuit court praying a decree incorporating a society to be known as "Young Women's Christian Association." The St. Louis Women's Christian Association filed objections to the petition on the grounds that it had been using the name "Young Women's Christian Association" for years for one of its auxiliary organizations, engaged in carrying on the same work intended to be done by the new society; that its auxiliary branch received donations under the title of Young Women's Christian Association, and gets its mail in that name; that letters are addressed to it in that name, and to incorporate a new society under that name would result in confusing the mails of the two societies. The circuit court overruled the objections and granted the decree, and the St. Louis Women's Christian Association appealed. This court held as follows, 115 Mo.App. loc. cit. 231-232, 91 S.W. loc. cit. 172:
[13] "But we know of no law by virtue of which the St. Louis Women's Christian Association had the right to be made a party to the proceedings instituted to incorporate the Young Women's Christian Association, or to appeal from the decree of incorporation. The statutes provide that when a petition for the incorporation of a religious or benevolent society is filed in the circuit court, if the court is of the opinion that the articles of agreement and the purpose of the association come within the purview of the statutes, and are not inconsistent with federal or state laws, an order reciting such opinion shall be entered, and a certified copy of it attached to the articles. This order cannot be entered until the petition has remained on file for three days after it is presented to the court. If the judge to whom the petition is presented entertains a doubt as to the propriety of incorporating the association, he may appoint some person to investigate the matter as a friend of the court. The amicus curiae may take testimony concerning the purpose of the association, and, on the hearing, the court may grant or dismiss the petition, as seems best. R.S. 1899, § 1395 [Mo.R.S.A. § 5437.] The statutes appear to contemplate an ex parte proceeding, instead of one to which persons or corporations can be made parties on their application because they hold rights which may be infringed by granting the petition. The members of this court are of the opinion that the St. Louis Women's Christian Association had no legal right to intervene in the corporation proceedings and no right of appeal from the decree. The essential point is that it had no right to become a party to the proceeding. If the interests of the old society will be disturbed, as it avers, perhaps there is a remedy. The decisions show that the *Page 479 
remedy usually granted in such cases is an injunction against the use of the corporate name by the society last organized. International Committee of Y. W. C. A. v. Y. W. C. A., 194 Ill. 194, 62 N.E. 551, 56 L.R.A. 888; In re First Presbyterian Church of Harrisburg, 2 Grant Cas. 240; Edison Storage Battery Co. v. Edison Automobile Co., 67 N.J.Eq. 44, 56 A. 861; Philadelphia Trust etc. Co. v. Phila, Trust Co., C.C., 123 F. 534; Boston Rubber Shoe Co. v. Boston Rubber Co.,149 Mass. 436, 21 N.E. 875; Hendricks v. Montague, L.R. 17 Ch.Div. 638.
[14] "The appeal is dismissed."
[15] But appellant says that when the Young Women's Christian Association case was decided there was no general statutory authority for an intervention in a pending cause, whereas Section 21 of the Civil Code of Missouri authorizes an intervention in a pending proceeding by an interested party. However that may be, the St. Louis Boating Association did not ask to intervene in the matter of the petition of the Chain Yacht Club to incorporate. It merely filed an after trial motion objecting to the report of the amicus curiae and to the court's decree. This motion was filed without leave or license. It was in no sense a motion to intervene as provided in Section 21. The prayer of the motion as above set out clearly shows it was not intended to be a motion to intervene as contemplated by Section 21. It was not accompanied by a pleading setting forth the claim or defense for which an intervention might or could be sought.
[16] Not only so, but the intervention as contemplated by Section 21 of the Civil Code is an intervention in a pending case, and not a motion filed several days after final judgment by one who is not a party to the proceedings, and objecting to the proceedings. Section 21 of the Code is only available to one "upon timely application". In this matter the appellant knew that the petition for incorporation had been filed and its only excuse for not moving to intervene before final judgment was that an understanding was had that the proceedings would be held up pending negotiations for the sale of a boat. Even if the petitioners did violate an understanding to hold up the proceedings that could in no manner have affected the negotiations for a sale of the boat. Petitions for intervention after a decree are very unusual and are seldom granted. Baltimore Trust Co. v. Interocean Oil Co., D.C., 30 F.Supp. 484.
[17] Section 21(a) of the Civil Code provides: "Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action; or (3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof."
[18] Section 21(b) provides: "Upon timely application anyone may be permitted to intervene in an action: (1) when a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."
[19] Even if appellant had filed a timely motion to intervene, it would not have been authorized by Section 21(a), because appellant can point to no statute conferring an unconditional right to intervene, nor does it show wherein the representation of its interest, if any, by the existing parties would be inadequate, or that it may be bound by the judgment; nor would the applicant be adversely affected by a distribution or disposition of property in the custody of the court or of an officer thereof.
[20] Consequently even if appellant was ever entitled to ask to intervene it would have been under Section 21(b). And, it is discretionary with the court whether to permit intervention under Section 21(b). Section 21 of our Code is taken from and in effect is the same as Rule 24 of the Federal Rules of Civil Procedure, 28 U.S.C.A. *Page 480 
It has been held by Federal courts that the exercise of discretion on a motion to intervene is not reviewable by an appellate court unless clear cause is shown. Allen Calculators, Inc., v. National Cash Register Co., 322 U.S. 137, 64 S.Ct. 905, 88 L.Ed. 1188, also Id., 322 U.S. 771, 64 S.Ct. 1257, 88 L.Ed. 1596. To the same effect are decisions of our own courts. City of St. Louis v. Silk, Mo.App., 199 S.W.2d 23. In this case no sufficient cause was shown for intervention.
[21] And again with reference to the untimeliness of appellant's motion even if it could be construed as a motion to intervene: in the case of Ewart v. Peniston, 233 Mo. 695, 705, 136 S.W. 422, 424, the Supreme Court said: "Persons desiring to be made parties to a suit before trial can file application to that effect, but after trial the motion for new trial must come from the losing party. Strangers to the record should not be permitted to appear at this point of a proceeding." The Supreme Court en Banc has held that since a suit cannot be pending after the issues have been judicially determined or a judgment has been rendered therein, the bringing in of new parties under the statute can have no application to an intervention after judgment rendered. Zeitinger v. Hargadine-McKittrick Dry Goods Co., 298 Mo. 461,250 S.W. 913. One of the reasons for such holding is that no one is affected by a judgment to which he was not a party or privy. State ex inf. Kell v. Buchanan, Mo.Sup., 210 S.W.2d 359.
[22] For three reasons this appeal should be dismissed: (1) appellant is not a party to the proceedings and judgment from which the appeal is taken; (2) even if timely motion to intervene had been made, it would be discretionary with the court as to whether it be permitted, and there is nothing in the record to indicate an abuse of discretion on the part of the trial court; and (3) the motion of appellant was not timely in any event.
[23] The appeal is dismissed.
[24] ANDERSON, P. J., and McCULLEN, J., concur.